UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**GABRIEL ANTONIO MARTINEZ,**

Petitioner,

v.

**STU SHERMAN,**

Respondent.

Case No. 15-cv-03480-YGR

**ORDER DENYING PETITION FOR HABEAS CORPUS RELIEF**

Now before the Court is petitioner Gabriel Antonio Martinez's petition for a writ of habeas corpus. (Dkt. No. 1.) The government answered (Dkt. No. 13) and petitioner filed a traverse in reply. (Dkt. No. 16.) Petitioner raises one ground for relief.[1] Petitioner asserts that he is entitled to habeas corpus relief under *Jackson v. Virginia*, 443 U.S. 307 (1979), which provides that an applicant may obtain relief when no rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the record evidence adduced at trial. *Id.* at 324. Specifically, petitioner claims that the state appellate court's opinion regarding the sufficiency of the evidence with regards to great bodily injury ("GBI") enhancements was premised on an unreasonable determination of the facts. (Dkt. No. 16 at 4.)

Based thereon, petitioner seeks a writ of habeas corpus. Having carefully considered the petition and the papers submitted, and for the reasons stated below, the petition for such relief is **DENIED**.

---

[1] Petitioner originally raised three grounds for relief, namely whether: (i) great bodily injury enhancements may be imposed in cases involving a manslaughter conviction; (ii) evidence was sufficient with regards to the great bodily injury enhancements; and (iii) evidence was sufficient with respect to one count of furnishing a controlled substance, for prosecution's failure to prove the crime's "corpus delicti." However, in his traverse, petitioner conceded that the first and third grounds for relief are unavailable in this forum. (Dkt. No. 16 at 8.)

# I. BACKGROUND

On January 25, 2013, a Monterey County judge found petitioner guilty of involuntary manslaughter and three counts of furnishing a controlled substance. *See People v. Martinez*, 226 Cal. App. 4th 1169, 1172 (2014), *reh'g denied* (June 24, 2014).[2] Additionally, the court found true a GBI enhancement attached to two of the furnishing counts. *Id.* The court sentenced petitioner to eleven years and eight months in state prison on the basis of these findings. *Id.* On June 6, 2014, in a published opinion, the California Court of Appeal affirmed the judgment. *Id.* at 1173.

In addressing the petitioner's claims on appeal, the California Court of Appeal summarized the relevant facts as follows:

> At approximately 11:12 a.m. on June 10, 2011, Officer Shaumbe Wright was sitting in his patrol car when appellant approached him. Appellant told Officer Wright that he thought "this girl over there is dead. Somebody needs to check." Appellant explained to Officer Wright that he did not know the girl; however, he went on to say that he and the girl had "gone out last night" and even though he was married they "hooked up." When Officer Wright asked how he knew the girl was dead, appellant said he found "stuff" oozing out of her mouth.
>
> After appellant indicated which apartment the girl was in, Officer Wright knocked on the door, but there was no answer. The door was unlocked; when Officer Wright called inside no one answered. The officer entered the apartment and went to the bedroom where he saw a woman, later identified as Lisa Groveman, lying on her right side with her eyes open. She had some discoloration in her right jaw area and appeared to the officer to be deceased; Officer Wright could not find a pulse. According to Officer Wright, Ms. Groveman's body felt stiff and her lips were a different color. The officer did not see any fluid flowing from her mouth. When paramedics arrived and checked Ms. Groveman's condition, they pronounced her dead.
>
> At the scene, Officer Wright asked appellant if he would be willing to answer some questions and appellant responded that he was willing so to do. One of the questions that Officer Wright asked was if appellant had seen Ms. Groveman take any pills. Appellant said that he had seen her take pills at the restaurant where they met; this was before they came to the apartment. Appellant said that the pills were white and that he had given them to Ms. Groveman; specifically, he said had

---

[2] Petitioner waived his right to trial by a jury in exchange for the prosecution dismissing the murder charge. (*See* Dkt. No. 13-3 at 13; Dkt. No. 13-7 at 4–5.) Defendant also agreed to waive certain sentencing rights, and the prosecution agreed that petitioner could only be sentenced as to one of the GBI enhancements, with a total sentence not to exceed eleven years and eight months. (Dkt. No. 13-7 at 4–5.)

given her two 10-milligram methadone pills. Appellant told Officer Wright that he did not have any more pills. Appellant explained that he had met Ms. Groveman at Lalapalooza the evening of June 9, between 9:45 p.m. and 10:00 p.m. He talked with Ms. Groveman. Later, they met up at another bar called "Cibo's" at approximately 12:15 a.m. After meeting at Cibo's they went to Ms. Groveman's apartment and had sexual intercourse.

Appellant told Officer Wright that after intercourse, he and Ms. Groveman were sleeping and he noticed Ms. Groveman was "acting weird." He tried to wake Ms. Groveman, but she was "kind of groggy." Appellant said that he left the apartment at 8:00 a.m. He telephoned Ms. Groveman, but she did not answer her telephone. He returned to the apartment at 11:03 a.m. and knocked on the door. However, Ms. Groveman did not answer the door so he left; appellant explained that when he saw Officer Wright sitting in his patrol car he went back to the apartment. When he returned he opened the apartment door and went in. Appellant said he found Ms. Groveman on the bed, but he could not find a pulse; that is when he notified Officer Wright that possibly Ms. Groveman was dead.

*Id.* at 1173–74. The Court of Appeal further explained:

Appellant told the police that Ms. Groveman had been drinking at the bars, that she asked him what he did for a living and if he had any drugs. When he left Lallapalooza he went to get drugs. Appellant admitted giving Ms. Groveman two 10-milligram methadone pills at Cibo's, which Ms. Groveman ingested. Appellant said he gave Ms. Mavris two pills, he assumed she took them, but was not sure. Appellant said he had a total of six pills when he was at the bar; he had taken a couple of methadone pills earlier in the evening. Appellant explained that he was addicted to painkillers as a result of some sport injuries. Appellant said he got the drugs from a friend, not through his work.

* * *

Forensic pathologist Dr. John Hain performed Ms. Groveman's autopsy. He testified that Ms. Groveman's lungs were heavy from accumulated fluid and there was some foam in her airway; her bladder was extremely distended. He said this was typical in a victim who had overdosed on sedatives. Ms. Groveman's toxicology results showed a high level of methadone and hydrocodone and a moderate level of alcohol.

Dr. Hain stated that with a sedative overdose the victim's breathing decreases and the oxygen level in the blood starts to decrease; this has an effect on multiple organs. In particular, the lungs start to leak fluid and this causes pulmonary edema, which is fluid buildup in the lungs. Dr. Hain explained that as the fluid builds it tends to leak out of the airway usually as foam; the foam has proteins in it. Ms. Groveman had small bubbles of "pernicious fluid" in her airways. People who have overdosed have a propensity to vomit and aspirate stomach contents; when this happens there is an irritant effect in the lungs and they respond by pouring out more fluid. Dr. Hain saw evidence of both these causes of edema in Ms. Groveman; there were food particles in the large airways and residual food in her stomach.

Based on Ms. Groveman's blood toxicology results, Dr. Hain concluded that Ms.

> Groveman had drunk alcohol a number of hours before she died. The level of methadone in her system was 0.38 milligrams per liter, which was in the fatal range for a non-tolerant user. The level of hydrocodone was 0.08 milligrams per liter, a level that was especially elevated for someone who did not have tolerance for the drug. The hydrocodone itself was not fatal but in combination with the other drugs and alcohol could be lethal. Dr. Hain concluded that the cause of death was methadone, hydrocodone and alcohol intoxication. He could not estimate an exact time of death, but indicated that based on the signs of rigor mortis, Ms. Groveman died sometime between 5 a.m. and 8:00 a.m. He opined that by 8 a.m. Ms. Groveman was either dead or deeply unconscious and close to death. As to the quantity of pills that Ms. Groveman ingested, based on the level of the drugs in her blood Dr. Hain indicated that Ms. Groveman ingested six or seven 10-milligram methadone pills and six to eight 10-milligram hydrocodone pills.
>
> According to Dr. Hain, a person observing someone with pulmonary edema would hear a drowning sound—gurgling, raspy breathing—and see fluid coming from the mouth or nose. There would be visible signs of lethargy. Dr. Hain testified that the reddish brown stain found on Ms. Groveman's bed sheet was consistent with the type of stain that could result if a person had pulmonary edema and was purging fluid. The proteins in the fluid give the fluid a yellowish or amber appearance; often red blood cells are present. There was no evidence that Ms. Groveman had pulmonary disease or chronic asthma.

*Id.* at 1176–79. On September 17, 2014, the California Supreme Court denied the petition for review on the direct appeal. (Dkt. No. 13-15 at 225.)

Petitioner now seeks habeas relief under the Supreme Court's ruling in *Jackson*, claiming that the evidence was insufficient to sustain a finding against him with respect to the GBI enhancement to his sentence.

## II.  LEGAL FRAMEWORK

### A.  Habeas Corpus Standard

A federal court can entertain a petition for a writ of habeas corpus on behalf of a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, section 2254(d), a state prisoner can obtain habeas relief regarding a claim adjudicated in state court only if the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court

4

1    proceeding." 28 U.S.C. § 2254(d).

2          A state court decision is "contrary to" clearly established federal law, as determined by the
3    Supreme Court, only if "the state court arrives at a conclusion opposite to that reached by [the
4    Supreme] Court on a question of law or if the state court decides a case differently than [the
5    Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S.
6    362, 411–12 (2000). A state court decision is considered an "unreasonable application" of clearly
7    established federal law, as determined by the Supreme Court, if it correctly identifies a governing
8    legal principle from a Supreme Court decision but "unreasonably applies that principle to the facts
9    of the prisoner's case." *Id*. at 413. A federal court reviewing a habeas petition cannot issue the
10   writ "simply because that court concludes in its independent judgment that the relevant state-court
11   decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, a
12   federal court may grant the writ only if they find the state court decision was contrary to or an
13   unreasonable application of a clearly established federal law. *Id*. at 409. The Supreme Court has
14   ruled that the petitioner has the burden of showing that a state court decision is an objectively
15   unreasonable application of clearly established federal law. *See Cullen v. Pinholster*, 563 U.S.
16   170, 181 (2011); *Harrington v. Richter*, 562 U.S. 86, 98, 101–03 (2011). A state court's factual
17   determination is not unreasonable simply because the federal habeas court would have reached a
18   different conclusion. *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

19         AEDPA requires a "highly deferential" standard for evaluating state court rulings and
20   "demands that state court decisions be given the benefit of the doubt." *Lindh v. Murphy*, 521 U.S.
21   320, 333 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). "[A] habeas court must determine
22   what arguments or theories supported or . . . could have supported, the state court's decision; and
23   then it must ask whether it is possible fair-minded jurists could disagree that those arguments or
24   theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*,
25   562 U.S. at 102.

26         A federal court should only grant relief due to a constitutional error of the state court when
27   the error was not harmless, that is, only if it had a "substantial and injurious effect or influence in
28   determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Furthermore,

5

federal habeas corpus relief "does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "The habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* (internal citation omitted). Additionally, the Court must "accept a state court ruling on questions of state law." *Melugin v. Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994) (citing *Jackson v. Yist*, 921 F.2d 882, 885 (9th Cir. 1990)).

When there is no reasoned opinion from the highest state court considering the petitioner's claims, the federal court reviewing the habeas petition should consult the last state court to render a decision on the claims to determine whether or not a clearly established law of the Supreme Court was unreasonably applied. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991). The last reasoned state court decision in this case is the California Court of Appeal's published opinion issued on June 6, 2014.

### B. *Jackson* Claim Standard

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

A federal habeas court reviewing a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.19923), *as amended on denial of rehearing and rehearing en banc*, *cert. denied*, 510 U.S. 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See id*. (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324.

The *Jackson* standard applies to state sentence enhancements, allowing a petitioner to obtain habeas relief if no rational trier of fact could find the elements of the enhancement true beyond a reasonable doubt. *Garcia v. Carey*, 395 F.3d 1099, 1102 (9th Cir. 2005) (granting

habeas relief because there was no evidence that robbery furthered other gang criminal activity, an element of the gang sentencing enhancement); *see*, *e.g.*, *Briceno v. Scribner*, 555 F.3d 1069, 1078–79 (9th Cir. 2009) (gang expert testimony about behavior and traits of defendant's gang could not and did establish defendant's specific intent for purposes of gang sentencing enhancement).

In reviewing the sufficiency of the evidence in a habeas corpus proceeding, all evidence must be considered in the light most favorable to the prosecution. *Lewis v. Jeffers*, 497 U.S. 764, 782 (1990). Under 28 U.S.C. § 2254(d), federal courts must "apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen III*, 408 F.3d 1262, 1274 (9th Cir. 2005), *cert. denied*, 546 U.S. 1137 (2006). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Id*. Relief may be afforded on a sufficiency of the evidence claim only if the state court's adjudication of such a claim involved an unreasonable application of *Jackson* to the facts of the case. *Id*.

### III.   DISCUSSION

Petitioner challenges the GBI enhancements on his furnishing counts, arguing that the judge's finding on the same violates *Jackson* because the evidence was insufficient to support such enhancements. GBI enhancements are governed by California Penal Code section 12022.7, which provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." The phrase "personally inflicts" means that someone directly, in person and not through an intermediary, causes someone to suffer an injury. *People v. Cross*, 45 Cal. 4th 58, 68 (2008). "[F]or the [GBI] enhancement to apply, the defendant must be the *direct*, rather than proximate cause, of the victim's injuries." *People v. Warwick*, 182 Cal. App. 4th 788, 793 (2010) (emphasis in original). For a defendant "[t]o 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury." *People v. Rodriguez*, 69 Cal. App. 4th 341, 349 (1999).

7

1    Here, the Court of Appeal held that the record evidence was sufficient to satisfy such a

2    standard. Specifically:

> Appellant's argument that there was insufficient evidence that he "personally inflicted" great bodily harm on Ms. Groveman is not well taken.
>
> In reviewing a claim of insufficiency of the evidence on appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Johnson* (1980) 26 Cal. 3d 557, 576.) Furthermore, when we review the evidence in the light most favorable to respondent, we "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal. 3d 421, 425.)
>
> "[T]he meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning. Commonly understood, the phrase 'personally inflicts' means that someone 'in person' [citation], that is, directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured.' [Citation.]" (*People v. Cross, supra,* 45 Cal. 4th at p. 68.)
>
> Certainly, "for the [GBI] enhancement to apply, the defendant must be the *direct,* rather than proximate, cause of the victim's injuries." (*People v. Warwick* (2010) 182 Cal. App. 4th 788, 793.) As the court in *People v. Rodriguez* (1999) 69 Cal. App. 4th 341 noted, "[t]o 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury." (*Id.* at p. 349.)
>
> Appellant concedes that the combination of drugs caused Ms. Groveman's death; he admits that Dr. Hain's testimony established that the amount of methadone was in the lethal range and that the level of hydrocodone, when combined with the amount of methadone, was also in the lethal range. Appellant argues however, that "the relevant question is whether his act of furnishing methadone and Vicodin—as opposed to Ms. Groveman's act of volitionally ingesting the drugs—directly caused her death."
>
> Appellant argues that the decision in *People v. Rodriguez, supra*, 69 Cal. App. 4th 341 (*Rodriguez*), is most helpful to his position.
>
> In *Rodriguez,* the defendant "was being transported with other prisoners from a police station to a jail. He escaped custody and began running away, instigating a chase by Officer Martin. At one point during Martin's pursuit of Rodriguez, a bystander handed Rodriguez a bicycle to aid in his escape. Martin tackled Rodriguez on the bicycle and both men fell to the ground. Martin testified that during the tackle he hit his head, either on the ground, the concrete sidewalk, or the lamppost, and was knocked unconscious." (*Rodriguez, supra,* 69 Cal. App. 4th at p. 346.) The *Rodriguez* court reversed a GBI finding because "in this case Rodriguez did not initiate a struggle or any other physical contact with the officer. Nor can we find evidence in this record of any act by Rodriguez that directly caused the officer injury." (*Id.* at p. 351.) "[A]lthough the record contains evidence Rodriguez proximately caused the officer's injury, we conclude that, as

> a matter of law, this record does not establish that Rodriguez directly inflicted the injury. According to the record, Rodriguez did not push, struggle or initiate any contact with the officer. . . . Instead, the evidence shows that Rodriguez was trying to escape arrest on a bicycle and the officer injured himself when he tackled Rodriguez." (*Id.* at p. 352.) We are not persuaded that *Rodriguez* adds anything to appellant's argument. In contrast to this case, in *Rodriguez,* there was no evidence the defendant had personally acted to cause the injuries to the victim.
>
> Simply put, appellant's argument that the enhancement is inapplicable because Ms. Groveman made a volitional choice that directly caused her death is unavailing. More than one person may be found to have directly participated in inflicting a single injury. For example, in *People v. Dominick* (1986) 182 Cal. App. 3d 1174, 1210–1211, the defendant who held the victim while a codefendant struck her was found directly responsible for the injury the victim suffered when she fell while pulling away. As our Supreme Court explained in *People v. Modiri* (2006) 39 Cal. 4th 481, while construing the identical phrase "personally inflicts great bodily injury" in Penal Code section 1192.7, subdivision (c)(8): "*The term 'personally,' which modifies 'inflicts' . . . does not mean exclusive* here. This language refers to an act performed 'in person,' and involving 'the actual or immediate presence or action of the individual person himself (as opposed to a substitute, deputy, messenger, etc).' [Citation.] Such conduct is '[c]arried on or subsisting between individual persons directly.' [Citations.] Framed this way, the requisite force must be one-to-one, but does not foreclose participation by others. [¶] In short, nothing in the terms 'personally' or 'inflicts,' when used in conjunction with 'great bodily injury' . . . necessarily implies that the defendant must act alone in causing the victim's injuries." (*People v. Modiri, supra,* at p. 493, italics added.)
>
> Appellant may not have forced Ms. Groveman to take a lethal quantity of drugs, but he supplied her with them knowing that the drugs were more dangerous when combined with alcohol. Appellant continued to supply drugs to Ms. Groveman as he watched her continue to consume alcohol and become intoxicated, so intoxicated that appellant felt she was not in any condition to drive and he drove her car to her apartment. Appellant's act of personally providing Ms. Groveman a lethal quantity of drugs while she was in an intoxicated state was the direct cause of Ms. Groveman's death. As the trial court found, "Ms. Groveman would not have died had Mr. Martinez not provided her with all the drugs that he had that night."
>
> In sum, there was substantial evidence that appellant personally inflicted GBI on Ms. Groveman.

*Martinez*, 226 Cal. App. 4th at 1184–86 (emphases in original).

Importantly, petitioner concedes that the facts of the case are largely undisputed: petitioner provided Ms. Groveman with several pills throughout the course of the evening. Ms. Groveman took these pills while drinking alcohol. As a result of the combination of said pills and alcohol, Ms. Groveman died. Petitioner then argues that the facts are "insufficient" as a matter of law

9

1    meet the definition of "personally inflicted" under California Penal Code section 12022.7 and the

2    imposition of GBI enhancements, thus warranting habeas relief.  *See* 28 U.S.C. § 2254(d)(1).

3        Reduced to its essence, petitioner's argument hinges on the notion that the Court of Appeal

4    misapplied California Penal Code section 12022.7, <u>not</u> that the state court's determination of the

5    facts was unreasonable.[3]  Thus, petitioner does not actually contend that the state court's

6    determination of the facts was unreasonable, but rather that the state court's interpretation of state

7    law was somehow incorrect.  Petitioner concedes that he is aware of no other case interpreting

8    California Penal Code section 12022.7 with regards to attaching GBI enhancements to an act of

9    furnishing narcotics, and the Court is aware of none.  The Court of Appeal provided its rationale

10   justifying its classification of this kind of act as sufficient to justify such an enhancement.  The

11   California Supreme Court declined review.  Accordingly, the Court of Appeal's published

12   decision here is controlling as to the application of section 12022.7 to such acts.  In a habeas

13   corpus proceeding, the Court is bound to follow the state court's interpretation of its own law.  *See*

14   *Melugin*, 38 F.3d at 1487 (federal courts must "accept a state court ruling on questions of state

15   law").  As a consequence, the Court is expressly precluded from granting habeas relief.  *See*

16   *Swarthout*, 562 U.S. at 219 ("The habeas statute 'unambiguously provides that a federal court may

17   issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in

18   violation of the Constitution or laws or treaties of the United States.'" (internal citation omitted)).

---

[3] Petitioner primarily relies on the California Supreme Court's decision in *People v. Cole*, 31 Cal. 3d 568 (1982) and the Court of Appeal's decision in *Rodriguez*, in arguing that a GBI enhancement cannot attach when a volitional act by the alleged victim occurs subsequent to the defendant's criminal act.  In *Cole*, the Supreme Court held that, for a GBI enhancement to attach, the defendant must have directly, not merely proximately, caused the injury.  *Cole*, 31 Cal. 3d at 572–73.  There, the Court found that the defendant had not personally inflicted the injury where his accomplice struck the victim and the defendant had only ordered the attack.  *Id.* at 571, 578–79.  In *Rodriguez*, a police officer was injured when he tackled the defendant who was fleeing.  *Rodriguez*, 69 Cal. App. 4th at 346.  During this altercation, the officer hit his head and was knocked unconscious.  *Id.*  The Court of Appeal in *Rodriguez* reversed a GBI finding because the defendant did not initiate the struggle or any physical contact with the officer.  *Id.* at 351.  Thus, although the defendant in *Rodriguez* proximately caused the officer's injury, the Court of Appeal held there that he did not directly cause the injury.  By contrast here, as the Court of Appeal held, petitioner did initiate contact by furnishing the drugs to Ms. Groveman.  In doing so, the Court of Appeal concluded that petitioner was, in part, a direct contributor to the injury Ms. Groveman sustained and was, therefore, liable for GBI enhancements under California Penal Code section 12022.7.

While the Court can understand the desire to reframe the question as one of "sufficiency," the argument does not persuade. Accordingly, the Court **DENIES** the petition for habeas relief.

IV.   **CONCLUSION**

For the foregoing reasons, the Court **DENIES** the petition for habeas corpus relief. A certificate of appealability will not issue. Reasonable jurists would not "find the [Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

Dated: January 10, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**